1 Robert L. Sallander Jr. (SBN 118352)
  *rsallander@gpsllp.com*
2 Kyle G. Kunst (SBN 279000)
  *kkunst@gpsllp.com*
3 **GREENAN, PEFFER, SALLANDER & LALLY LLP**
  6111 Bollinger Canyon Road, Suite 500
4 San Ramon, California 94583
  Telephone:    925-866-1000
5 Facsimile:    925-830-8787

6 Attorneys for Plaintiff
  SECURITY ALARM FINANCING ENTERPRISES, L.P.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITY ALARM FINANCING ENTERPRISES, L.P. d/b/a SAFEGUARD SECURITY a Limited Partnership,<br><br>    Plaintiff,<br><br>  vs.<br><br>MIKAYLA NEBEL, an individual, RUSSELL NIGGEMEYER, an individual, and DOES 1-25,<br><br>    Defendants. | Case No.: 15-4341<br><br>**COMPLAINT**<br><br>**Causes of Action:**<br><br> 1. **Trademark Infringement in Violation of the Lanham Act, 15 USC § 1114 et seq.**<br> 2. **False Endorsement in Violation of the Lanham Act, 15 USC § 1125 et seq.**<br> 3. **Intentional Misrepresentation.**<br><br>**DEMAND FOR JURY TRIAL** |

Greenan,
Peffer,
Sallander &
Lally LLP

COMPLAINT                                CASE NO._____

**PARTIES**

1. Plaintiff Security Alarm Financing Enterprises, L.P. d/b/a Safeguard Security ("SAFE") is a limited partnership formed under the laws of the State of California, consisting of two partners: Security Alarm Financing Enterprises, Inc. ("SAFE Inc.") and SAFE Security, Inc. ("SAFE Security Inc."). SAFE Inc. is a corporation formed and existing under the laws of the State of California, with its principal place of business in California. SAFE Security Inc. is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business in California. SAFE's principal place of business is in San Ramon, California. For over 25 years, SAFE has been in the business of selling, installing, servicing, and monitoring residential and commercial security alarm systems throughout the United States and Canada.

2. SAFE is doing business in Arizona under the names "Safeguard Security" (Trade Name No. 605611) and "Safeguard Security and Communications" (Trade Name No. 605387).

3. SAFE has trademarked several iterations of the word "SAFE" with the United States Patent and Trademark Office ("USPTO"). Among others, SAFE has trademarked the following:

   a. The word "SAFE," USPTO Registration Number 2432599. A true and correct copy of that USPTO Registration is attached as Exhibit 1.
   b. A drawing of a lighthouse above rolling waves next to the words "SAFE SECURITY," USPTO Registration Number 3346190. A true and correct copy of that USPTO Registration and mark are attached as Exhibit 2.
   c. The words "SAFE SERVICE." USPTO Registration Number 3109607.
   d. A drawing of a large, black "S" behind a lighthouse. USPTO Registration Number 2939036.
   e. The words "SAFE FINANCIAL." USPTO Registration Number 2852346.
   f. A drawing of a large, white "S" behind a lighthouse. USPTO Registration Number 2505890.

     g. A drawing of a lighthouse above rolling waves. USPTO Registration Number 3357925.

     h. The words "SAFE SECURITY." USPTO Registration Number 3116559.

     i. The words "SAFE@HOME." USPTO Registration Number 4385498.

     j. The words "SECURITY ALARM FINANCING ENTERPRISES." USPTO Registration Number 2757962.

4. In addition, SAFE has filed trademark applications for the following:

     a. The words "SAFEID." Serial Number 86666161 (filed June 17, 2015).

     b. The words "MY SAFE SECURITY REWARDS." Serial Number 86666210 (filed June 17, 2015).

     c. A drawing with the words "SAFE ID." Serial Number 86671999 (filed June 23, 2015).

     d. A drawing with the words "MY SAFE SECURITY REWARDS." Serial Number 86672002 (filed June 23, 2015).

5. Within the security alarm industry "SAFE" is commonly understood to refer to Plaintiff.

6. Defendant Mikayla Nebel ("Nebel") is a boxer who competes in venues throughout the United States and who maintains a globally-accessible website, Instagram account, Facebook page and other social media, advertising and promoting her athletic career.

7. On information and belief, Defendant Russell Niggemeyer ("Niggemeyer") manages Nebel's boxing activities, including her advertising and promotional activities, and acts as Nebel's agent.

8. Does 1-25 are persons and entities whose names and roles in this action have not presently been ascertained. At all times relevant herein, these Doe Defendants, along with Nebel and Niggemeyer, and their employees, agents, alter-egos, subsidiaries, affiliates, and other related entities, were the agents, servants, alter-egos and employees of each other, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

9. Whenever reference in this Complaint is made to any act or transaction of any Defendant, such allegation shall also include the principals, officers, directors, employees, agents and representatives of that Defendant, who committed, knew of, performed, authorized, ratified and directed such acts or transaction on behalf of the Defendant while actively engaged in the scope of their duties.

### JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331, and 28 USC § 1367(a).

11. The Court has personal jurisdiction over the defendants because the Defendants purposely actively market and promote Nebel in California, including the Northern District of California, via the Internet, on Facebook and Instagram websites. Furthermore, Nebel purposely made fraudulent misrepresentations, as more fully alleged below, aimed at a citizen of the forum state of California, SAFE, knowing that injury to SAFE would occur in California.

12. Venue is proper in this District under 31 USC § 3732(a).

### FACTS LEADING TO THIS LAWSUIT

13. After Nebel competing in a boxing context, SAFE President and Chief Executive Officer Paul Sargenti ("Sargenti") approached Nebel to determine if Nebel was interested in a sponsorship deal with SAFE.

14. Sargenti suggested that SAFE would purchase items for Nebel necessary for Nebel to market herself, and in return Nebel would market SAFE's products and services by wearing clothing emblazoned with SAFE's trademarked emblems and logos.

15. To induce SAFE to sponsor her, Nebel made the following misrepresentations of material fact to Sargenti. If SAFE had known the true facts, it would not have agreed to sponsor Nebel. Nebel's misrepresentations include the following:

   a. That Nebel was not then represented by a manager or agent. The true facts were that Nebel was then represented and managed by Neggemeyer;

   b. That there was nothing in her background, or the background of those associated with her that if known by the public would discredit SAFE as

1  Nebel's sponsor. The true facts were that Nebel was then represented and
2  managed by Neggemeyer who had been arrested on multiple counts of assault
3  and domestic violence.

16. In or around April of 2015, and in justifiable and reasonable reliance upon Nebel's misrepresentations to Sargenti, SAFE agreed to sponsor Nebel and began providing Nebel with goods, services, and cash. These goods and services included, among other things:

   a. Apparel and accessories;
   b. Boxing equipment;
   c. A backpack;
   d. A computer and computer accessories;
   e. Business cards;
   f. Photography sessions;
   g. Transportation; and
   h. Hotel rooms.

17. SAFE also provided Nebel with apparel that was emblazoned with SAFE's trademarked emblems and logos. Those items included, among other things:

   a. A silver boxing dress emblazoned with the SAFE'S Lighthouse Mark, USPTO Registration Number 3346190 (the "Silver Dress").
   b. A white cap emblazoned with the SAFE'S Lighthouse Mark, USPTO Registration Number 3346190 (the "White Cap").
   c. A black cap emblazoned with the SAFE'S Lighthouse Mark, USPTO Registration Number 3346190 (the "Black Cap").
   d. A black knit polo shirt emblazoned with the SAFE'S Lighthouse Mark, USPTO Registration Number 3346190 (the "Black Polo").

18. On July 28, 2015, SAFE learned for the first time that the representations previously made by Nebel were not true. As a home security company, SAFE does not wish to be affiliated with Niggemeyer or his principal, Nebel. SAFE immediately sent a letter to Nebel, cancelling the sponsorship and informing her that she was to return all property that SAFE had

acquired for Nebel, to return all SAFE apparel, and to cease using any of SAFE's trademarks.

19. On July 29, 2015, Sargenti received a voicemail from, on information and belief, Niggemeyer. On information and belief, Niggemeyer made several threats in that voicemail, including that:

    a. He would have "the feds stick their nose" into SAFE's finances;

    b. He was someone that Sargenti "does not want on your ass."

    c. Sargenti should not to "do anything provocative."

20. On August 6, 2015, Nebel posted a photo of herself on her Facebook page. In it, Nebel is seen wearing the Silver Dress, and SAFE's trademarked symbol is prominently displayed.

21. Immediately upon being made aware of that photograph, SAFE caused a second cease and desist letter to be sent to Nebel. In that letter, SAFE once more ordered Nebel to return all the property that SAFE had acquired for her, and demand she cease using SAFE's trademark.

22. Notwithstanding SAFE's cease and desist letters, Nebel has refused to return all property that SAFE acquired for her, including, but not limited to, SAFE apparel emblazoned with SAFE's trademarks, and has continued to use SAFE's trademarks in advertising and refer to SAFE as her sponsor.

23. Nebel has willfully infringed upon SAFE's trademarks by continuing to market herself on social media, including Facebook and Instagram, using SAFE's trademarks. Nebel continues to maintain an Instagram account where she markets services as a boxer sponsored by SAFE.

24. Specifically, Nebel's Instagram account contains posts such as:

    a. Nebel wearing the White Cap and Black Polo, with the caption: "Got some new apparel from my sponsor #SafeSecurity 'Keeping you SAFE for over 25 years' #Safeguard #SafeID #alarm #protect #secure #Security Alarm Financing Enterprises #boxing #boxeo."

    b. Nebel wearing the Black Cap and Black Polo, with a caption that contains the hashtags "…#sponsors #SafeSecurity #Safeguard #SafeID…"

    c. A picture of some of the equipment that SAFE purchased for Nebel with a caption that contains the following: "#Winning the best and safest gear money can buy! I'm blessed! … Love… my sponsor #SafeSecurity #safeguard #safeID…"

    d. A picture of the backpack, computer and computer accessories that SAFE purchased for Nebel with a caption that contains the following: "My ordinary, outdated laptop crashed on me the other day, and this is what my sponsor sends me! … #SafeSecurity #safeguard #safeID….Thank you Safe Security!"

    e. A picture of food products that SAFE purchased for Nebel with a caption that contains the following: "Provisions for war! … #safesecurity #safeguard…"

25. Notwithstanding SAFE's cease and desist letters, Nebel has refused to remove SAFE's trademarks from Nebel's websites and social media accounts.

26. There is a strong likelihood of confusion on the part of SAFE's current and future customers that SAFE continues to sponsor Nebel, because Nebel continues to claim that SAFE is her sponsor, and continues to use SAFE's trademarks, although she does not have permission to do so.

## FIRST CAUSE OF ACTION

*(Trademark Infringement in Violation of the Lanham Act, 15 USC § 1114 et seq-*

*Against All Defendants)*

27. SAFE re-alleges the above paragraphs as though set forth in full.

28. SAFE owns several valid, protectable trademarks registered on the Principal Register in the Patent and Trademark Office.

29. SAFE informed the Defendants to refrain from using any symbol or trademark of SAFE, and informed the Defendants that any permission SAFE may have given the Defendants to use such trademarks, based on information previously provided by the Defendants, had been revoked.

30. The Defendants continue to use SAFE's trademarks in commerce and advertising without SAFE's permission. The Defendants use of SAFE's trademarks is willful, and thus

1  SAFE is entitled to its costs and reasonable attorneys' fees.

2      31.    As a result of the Defendants' violations of 15 USC § 1114 *et seq.*, SAFE has
3  suffered damages in an amount to be determined at trial.

4      **WHEREFORE**, SAFE prays for relief as set forth below;

## SECOND CAUSE OF ACTION

*(False Endorsement in Violation of the Lanham Act, 15 USC § 1125 et seq. –*

*Against All Defendants)*

32.    SAFE re-alleges the above paragraphs as though set forth in full.

33.    The Defendants used SAFE's trademarks in a manner likely to cause confusion regarding their sponsorship by SAFE.

34.    The Defendants continue to post pictures and comments related to their false sponsorship by SAFE, after the Defendants knew that SAFE had withdrawn any permission to do so. The Defendants' wrongful use of SAFE's trademarks is willful, and thus SAFE is entitled to its costs and reasonable attorneys' fees.

35.    As a result of the Defendants' violations of 15 USC § 1114 et seq., SAFE has suffered damages in an amount to be determined at trial.

    **WHEREFORE**, SAFE prays for relief as set forth below;

## THIRD CAUSE OF ACTION

*(Intentional Misrepresentation – Against Nebel)*

36.    SAFE re-alleges the above paragraphs as though set forth in full.

37.    Nebel represented to SAFE that she had no manager and that there were no disreputable aspects of Nebel's background, which were false representations. Nebel knew at the time she made the representations to SAFE that the representations were false, or she made the representations with reckless disregard for the truth of those statements.

38.    Nebel intended SAFE to rely on those representations, and SAFE reasonably relied on those representations to SAFE's harm. SAFE's reliance on Nebel's representations was a substantial factor in causing SAFE's harm because SAFE reasonably relied on those representations when it provided money and other things to Nebel.

Greenan,
Peffer,
Sallander &
Lally LLP

COMPLAINT             CASE NO._____

1  **WHEREFORE**, SAFE prays for relief against all Defendants as follows:

2  (a) For temporary and permanent injunctive relief;

3  (b) For compensatory damages according to proof;

4  (c) For punitive damages;

5  (d) For reasonable attorneys' fees SAFE has and will incur in bringing and maintaining this
6  action;

7  (e) For all costs, expenses, and fees SAFE has and will incur in bringing and maintaining this
8  action;

9  (f) Prejudgment interest; and

10  (g) Such other relief as the Court finds appropriate.

12  Dated: September 22, 2015

13  **GREENAN, PEFFER, SALLANDER & LALLY LLP**

16  /S/
Robert L. Sallander, Jr.
17  Attorneys for Plaintiff
**SECURITY ALARM FINANCING ENTERPRISES, L.P.**

Greenan, Peffer, Sallander & Lally LLP

8

COMPLAINT                                             CASE NO._____

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

                /S/  
Robert L. Sallander, Jr.  
Attorneys for Plaintiff  
SECURITY ALARM FINANCING ENTERPRISES, L.P.

Greenan, Peffer, Sallander & Lally LLP

9

COMPLAINT                CASE NO._____